William E. Day and Geneva Day v. Commissioner.
Day v. Commissioner
Docket No. 57576.
United States Tax Court
T.C. Memo 1956-253; 1956 Tax Ct. Memo LEXIS 40; 15 T.C.M. (CCH) 1303; T.C.M. (RIA) 56253; November 15, 1956
*40 Leslie A. Gross, Esq., and Sydney E. Shuteran, Esq., for the petitioners. Richard C. McLaughlin, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent determined a deficiency of $1,117.62 in the income tax of petitioners for 1952. The only question for determination is the correctness of the respondent's action in disallowing a deduction taken on account of expenditures incurred in investigating and negotiating for the acquisition of certain properties which never were acquired. Findings of Fact Some of the facts have been stipulated and are found accordingly. The petitioners are husband and wife and now reside in Denver, Colorado. During the calendar years 1951 and 1952 they resided in St. Joseph, Missouri. They filed a joint Federal income tax return for the calendar year 1952 with the director at Denver, Colorado. About 1923, petitioner William E. Day, sometimes hereinafter referred to as the petitioner, became employed in the automobile business and continued to be employed in that business until 1937 when he obtained an automobile dealer's franchise and began conducting an automobile agency of his own. *41 Prior to 1951 he acquired a franchise for the sale of Pontiac automobiles in St. Joseph, Missouri. In 1951 the petitioner was vice president and general manager of and a stockholder in Miller-Day Pontiac Company, sometimes hereinafter referred to as Miller-Day, which conducted a Pontiac automobile sales agency business in St. Joseph, Missouri. The petitioner's Pontiac franchise was used in the conduct of the business of Miller-Day. In 1951 Miller, the other stockholder in Miller-Day, had 2 sons who were ready to enter business. Miller and petitioner were of the opinion that the corporation's business was not large enough to furnish employment at supervisory or administrative levels to them and also to Miller's sons. As a result petitioner and Miller decided to sell their stock in and terminate their association with Miller-Day. Negotiations for the sale of their stock began in October 1951 and resulted in the sale of the stock thereafter in 1951. Sale of the stock was on the installment basis and final payment was made on January 15, 1952. On or about the latter date the petitioner surrendered his Pontiac franchise and terminated his connection with Miller-Day. Before petitioner *42 and Miller began negotiations for the sale of their stock in Miller-Day, petitioner made inquiry at the zone office of the Pontiac Motor Division of General Motors Corporation at Kansas City, Missouri, as to the possibility of another Pontiac franchise being available under which he could operate a Pontiac agency as a sole proprietor, in the event he sold his stock and surrendered the franchise he then had. He was informed that if he sold his stock, surrendered his franchise and had the proper amount of capital another franchise perhaps would be available to him in Kansas City, Missouri, zone. Immediately upon the receipt of final payment for his stock in Miller-Day and the surrender of his Pontiac franchise the petitioner again contacted Pontiac's Kansas City zone office and began a search for "a new place of business." He also contacted the head of the Motors Holding Division of General Motors Corporation, the Pontiac Motor Division of General Motors Corporation and the representative for the western half of the United States of the Buick Motor Division of General Motors. As a result of those contacts the petitioner was informed at various times during 1952 that a Pontiac franchise *43 and premises upon which to conduct business under the franchise were available in each of the following places: Independence, Missouri, Denver, Colorado, Buffalo, New York, Wichita, Kansas, and Oshkosh, Wisconsin, and that a Buick franchise was available in St. Paul, Minnesota. During 1952 the petitioner traveled from St. Joseph, Missouri, to the abovementioned cities and to Pontiac, Michigan, and Detroit, Michigan. The trips to the latter 2 cities were for the purpose of ascertaining the definite requirements of the manufacturer with respect to franchises in the other 6 cities mentioned above. The trips made to those 6 cities were for the purpose of making investigations of and conducting negotiations with respect to the acquisition of the franchises and premises which he had been informed were available. For one reason or other the petitioner never acquired any of the franchises or any of the premises which he had been informed were available in those cities. In connection with his trips to the abovementioned 8 cities the petitioner expended a total of $2,851.89 for travel, meals, lodging and telephone expenses while away from St. Joseph, Missouri. In his income tax return for *44 1952 the petitioner deducted the foregoing amount with the explanation that the amount was expended in connection with attempts to purchase new automobile agencies and was applicable to business transactions which did not materialize. The respondent disallowed the deduction. In December 1952, petitioner investigated a Dodge-Plymouth business in Denver, Colorado, and acquired it in February 1953. He has conducted that business continuously since he acquired it. Neither in 1952, nor prior thereto nor since has the petitioner engaged in the business of buying and selling automobile agencies. Opinion No part of the deduction of $2,851.89 here in controversy represents any expenditure made by petitioner in connection with the investigation or acquisition of the Dodge-Plymouth business and no contention is made here that petitioner is entitled to any deduction therefor for the taxable year in question. Taking the position that at all times material herein he was an automobile dealer and that during 1952 he was carrying on that trade or business, the petitioner contends that the expenses in controversy were deductible as ordinary and necessary business expense. Prior to the termination *45 of his connection with Miller-Day about January 15, 1952, the petitioner was vice president and general manager of that corporation which conducted a Pontiac sales agency. But the business of a corporation is not that of an officer or stockholder. Burnet v. Clark, 278 [287] U.S.0 410. The only activity the petitioner engaged in in 1952 following the severance of his connection with Miller-Day as disclosed by this record was the investigation of and negotiation for the acquisition of franchises and premises with which he as a sole proprietor could conduct an automobile sales agency business. The investigation and searching for a property preparatory to entering a business is not carrying on business. ; . In view of the foregoing we conclude that the petitioner was not engaged in a trade or business during 1952. Since he was not engaged in a trade or business during that year, the amount in controversy was not deductible as an ordinary and necessary business expense. The petitioner contends that if the amount in controversy was not deductible as an ordinary and necessary business expense then it *46 was deductible as a loss incurred in transactions entered into for profit. We are unable to find that the petitioner entered into any transactions for profit. Several possible transactions were investigated but for one reason or other the petitioner did not enter into any of them. It can not be said that petitioner entered into a transaction every time he visited a new city and investigated and negotiated for new business properties. If the search, such as petitioner conducted, for suitable business properties itself be considered as a transaction entered into for profit, there would have to be a showing of abandonment of such project during the taxable year in order for the petitioner to be entitled to a loss with respect thereto. Such a showing has not been made. Instead, the evidence shows that at some undisclosed time in December 1952, the petitioner investigated a Dodge-Plymouth business in Denver, that he acquired that business in February 1953 and that he has conducted it continuously since he acquired it. The contention of the petitioner as to the allowance of a loss is not sustained. Consequently, the amount in controversy is not deductible *47 as losses as petitioner contends. Decision will be entered for respondent.